(C. D. 113)

JOHN A. CONKEY & CO. v. UNITED STATES

United States Customs Court, Third Division

(Decided March 1, 1939)

*Joseph F. Lockett* for the plaintiffs.

*Charles D. Lawrence,* Acting Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an action to recover a certain sum of money paid by the plaintiffs on an importation of an electric motor with certain accessories entered at the port of Boston, Mass., which it is claimed was being imported for experimental purposes. The record discloses that at the time of entry there was some discussion as to whether an entry for drawback could be made, but none was attempted; neither was an application made for an entry under a six-months' bond for experimental purposes as is provided for in section 308 of the Tariff Act of 1930. A consumption entry was made and the duties paid.

The merchandise was sent to the appraiser's stores for examination and it was discovered that a complete examination could not satisfactorily be made because the motor was thoroughly bolted to the packing cases. However, sufficient examination was made to permit of proper identification of the same. It appears that, partially for the convenience of the importer, an application under article 772 of the Customs Regulations of 1931 was made for an examination at Biddeford, Maine. Subsequently the merchandise was shipped under bond to that port. After its arrival there the importer notified the collector, who dispatched an examiner to Biddeford. This examiner testified at the trial that he made his examination on July 30, 1936, at the shops of the importer in Biddeford, Maine, where the motor had been delivered under bond. Thereafter the importer, desiring to export the motor and believing that it was still under customs custody, delivered

the same to the appraiser at Boston, who refused to receive it but who did note the arrival there.

It was subsequently shipped under bonded carrier to the port of exportation and the motor was exported to South America. The defendant claims that a refund cannot be made because of the provisions of section 558 of the tariff act. We quote, for convenience of reference, the provisions of section 558 as follows:

SEC. 558. NO REMISSION OR REFUND AFTER DELIVERY OF MERCHANDISE.

No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed on the exportation of any merchandise after its release from the custody or control of the Government except in case of the exportation of articles manufactured or produced in whole or in part from imported materials, or not conforming to sample or specifications, on which a drawback of duties is expressly provided for by law.

The sole question is whether or not this machine was continuously in customs custody until its exportation. At the trial all the papers in the protest jacket were admitted in evidence. Aside from the entry papers these documents consist of telegrams and letters which passed between customs officials and the importer concerning this transaction. From these it appears that originally the collector at Boston had considered that this machine had been continuously in customs custody, but that the Commissioner of Customs had a contrary view, the Commissioner having declared that customs custody ceased when the appraising officers had completed the examination of the machine at the importer's place of business.

The position of the Bureau of Customs is expressed by a telegram, part of Collective Exhibit A, as follows:

* * * Bureau has previously held customs custody ceases when appraiser's representative completes outside examination. Therefore if examination completed present case refund prohibited Sec. 558. * * *

Article 772 of the Customs Regulations of 1931, relating to the examination of machinery, etc., at the mill, factory, or other suitable place after being set up and assembled, provided at the time of entry among other things that:

After the bond has been filed and the preliminary examination has been made the collector may release the packages to the importer.

Thereafter, of course, the importer does take physical possession of them. Nevertheless, they are yet under bond, the provisions of which bond are not before us, and in our judgment need not be considered.

Article 1058 of the Customs Regulations of 1931, which was drafted to give directions as to the method of carrying out the provisions of said section 558, *supra*, provides in paragraph (c):

(c) Merchandise which has been released to an importer under the bond prescribed by article 309 of these regulations, and returned to the appraiser's stores upon requisition of the collector, and merchandise released under six months'

bond as provided for in section 308 of the Tariff Act of 1930, has not been in the continuous custody of customs officers.

The bond to be given for release of merchandise under article 309 is designated as Form 7551 or 7553. That is the same form of bond designated under paragraph (*f*) of article 772, *supra*. It would therefore appear that under the regulations this merchandise cannot be said to have been in continuous customs custody. Yet the ruling of the Commissioner would indicate that even though it had been released and hence not in continuous customs custody it nevertheless was in continuous customs custody until the completion of physical examination for the purpose of appraisement had been made. In our view the safer and better rule would be to hold that from the time of release under the bond described such merchandise cannot be said to be in customs custody. In either event, the decision of the Commissioner in the instant case is in accord with the subsequent amendment to article 1058 that was adopted on January 5, 1937 (T. D. 48739), viz,

(*f*) Except as provided by paragraph (*d*) of this article, merchandise examined elsewhere than at the public stores in accordance with the provisions of article 772 is released from customs custody when final examination for purposes of appraisement has been completed.

The statute authorizing refund has not been complied with. The Summary of Examination and Appraisement herein discloses that the appraiser did not make his report until December 3, 1936. The same document shows the examiner's initials to have been F. H. B. and the testimony shows that Examiner Francis H. Bellevue testified that he made his final examination on July 30, 1936.

It is our opinion that this merchandise had not been continuously in customs custody up to and including the time it was presented to the collector the second time with request for the right to export and for refund. That being the case, the plaintiff's claim should be and the same is hereby overruled.

Judgment for defendant. It is so ordered.